LASS, Respondent, v. LASS, Appellant.

(217 N. W. 383.)

(File No. 6294. Opinion filed December 31, 1927.)

*Gunderson & Gunderson,* of Vermillion, and *Bogue & Bogue,* of Parker, for Appellant.

*Danforth &Barron,* of Sioux Falls, for Respondent.

BROWN, J. On July 25, 1924, plaintiff, Sophia Lass, procured a divorce from her husband, Fritz Lass, on the ground of desertion and nonsupport, which she alleged had continued for more than one year prior to that date. They had then been married 33 years, plaintiff was 52 years of age, her husband 61, and they had a family of five grown children, three sons—Fred 26 years of age, Louis 24, and Thorwald 18—and two married daughters both older than the boys. During practically all of their married life they lived in Vermillion where Fritz Lass carried on a bakery and restaurant business. For several years prior to the

divorce action strained relations had existed between the plaintiff and her husband, largely due to differences between them as to the bringing up of the boys. The husband wanted the boys to graduate from high school and get a good education, but it seemed the boys did not care much for education, and, when the husband would urge them to keep on in school and correct them for conduct which he did not approve of, the wife took the part of the boys; and as time went on the differences between husband and wife became more acute and culminated in a divorce. Prior to the divorce they had, by mutual agreement, divided the property accumulated during their married life.

The defendant was a maiden lady about 48 years of age at the time of the divorce. She lived in Vermillion and owned a considerable amount of property there, which included some residence property which she rented. One of her houses just across the street from where she lived was rented to Albert R. Lovejoy and occupied by him from September, 1922, until some time in the fall of 1924. Fritz Lass has been acquainted with Lovejoy for many years and when his home life became increasingly irksome, Fritz about the month of March, 1923, began to call at the Lovejoy home in the evening and there played cards with the Lovejoys. At his suggestion defendant was invited by Mrs. Lovejoy to come over on some of these occasions and join the company, and she continued from time to time to participate in these evening visits to the Lovejoys' home on occasions when Mr. Lass would be there until after Sophia Lass procured her divorce.

The defendant and Fritz Lass were married to each other on December 2, 1924, and ever since have been husband and wife. On May 21, 1925, this action for alienation of affections was commenced by plaintiff, the former wife of Fritz Lass, against his present wife, Margaret Peterson Lass, demanding $75,000 compensatory and $25,000 exemplary damages. The jury found a verdict in her favor in the sum of $9,000, and from judgment on the verdict and an order denying a new trial defendant appeals.

With the exception of the testimony of Albert Lovejoy, the evidence on behalf of plaintiff tended to show, at the most, that the defendant passively acquiesced in the attentions of Fritz Lass. Practically the only evidence other than Lovejoy's in support of

plaintiff's case was the testimony of the plaintiff and her children, to the effect that on one evening in July, 1923, Fritz was visiting with Margaret Peterson on the porch at her home where his car stood out in front, and that on a few other occasions prior to the divorce the defendant had been seen riding in Mr. Lass' car, once when two others were along, and on two or three occasions without other company. Fred Lass testified that on one occasion in September, 1923, he saw his father teaching Miss Peterson how to drive his car.

Lovejoy testified, in substance, that Fritz Lass was at his house frequently in the fall of 1923, and that Margaret Peterson would sometimes come over and visit and they played cards together; that on one occasion Miss Peterson left at their house a suit of clothes that looked as though it had been cleaned and pressed, and a hat, saying she feared they would search her house and find them; that in the fall when grapes were ripe, he and his wife and Miss Peterson went to the river to gather grapes, taking a picnic lunch along, and there they met Fritz Lass who had brought along something for the lunch, and the party had a picnic lunch and gathered grapes and took some kodak pictures, returning to Vermillion in the evening; that on another occasion in the early part of July, 1923, he and his wife and Fritz Lass and Miss Peterson went on a picnic in the vicinity of Yankton; and that at another time he and his wife, Mr. Lass, and Miss Peterson went to Sioux City together, all in Mr. Lass' car, and that part of the time Fritz and Miss Peterson sat in the back seat while he and his wife sat in the front seat. He also testified that at Christmas, 1923, Miss Peterson gave Lass a silk shirt and some hose; that she had said on one occasion that Mr. Lass was the nicest man in Vermillion; and that on another occasion Miss Peterson, talking to Mrs. Lovejoy in his presence about Lass's home troubles, said that when Mr. Lass went to the garage at his residence to get his car after he had left home and was living at the hotel, his wife had come out and talked to him and cried and tried to get him to come back, and that she (Miss Peterson) had said, "Why do you want to go back to that woman?" and on his stating that he did not have money enough to keep his car anywhere else, she said, "What do you care? We have plenty of money."

Some time in August, 1923, Miss Peterson served

notice on Lovejoy to vacate the house he was renting from her. She says that she had had trouble with him about the rent. Lovejoy admits that for two or three months before he moved out he had not paid the rent, but says that Miss Peterson had told him he should not worry about the rent if he would drive her car when she wanted. About the time this notice to vacate was served upon Lovejoy, he sent to the plaintiff one of the kodak pictures that was taken on the occasion of the grape gathering picnic. This picture was taken by Mr. Lovejoy and originally included Fritz Lass with Miss Peterson on one side of him and Mrs. Lovejoy on the other, apparently in a sitting position with the lunch articles spread on a cloth on the grass in front of them. Before sending the picture, however, Lovejoy had clipped away that part of it which showed his wife. The picture as thus mutilated shows Lass and Miss Peterson in quite close proximity to each other; she apparently leaning against his shoulder. Plaintiff offered this mutilated picture in evidence, and it was received, over the objection of the defendant that no proper foundation had been laid for its introduction; that it was a mutilated picture, and did not show the true situation existing when it was taken; that in its mutilated condition it was misleading and apparently fixed up for the purposes of this action. It may be doubted if the picture was admissible, even had it not been mutilated. Lovejoy testified in regard to it:

"I took the picture myself. We were having a good time that day, and were taking pictures of each other, and were in all sorts of poses and attitudes."

It is a matter of common knowledge that people on a picnic where kodak pictures are being taken of a group very frequently place themselves in poses and situations that do not represent their feelings towards each other at all; but are simply taken up in a spirit of sport and fun, and without the least supposition that the position that they take in the picture will be seriously thought of by any one. But in its mutilated condition this picture does not even show the true situation that existed when it was taken. The line on which it is cut off renders it impossible to tell in what attitude or pose Mrs. Lovejoy may have been relatively to Lass.

In Stewart v. St. Paul City Railway Co., 78 Minn. 110, 80 N. W. 855, it is said:

"A photograph may be a correct representation of a place, and

yet, from a variety of causes, be very misleading as to distances or the relative size or location of objects."

We think that on account of the mutilation of this picture it does not furnish a correct representation of the situation existing when it was taken, and it was error to admit the picture.

■ Defendant, as a witness in her own behalf, testified that she had trouble with Lovejoy about the rent prior to the time that he moved out of the house, and a question asked of her as to how much rent he owed her when he moved out was objected to as a collateral matter, immaterial, and irrelevant. The objection was sustained.

■ The defendant was then asked if, in a conversation that she had had with Mr. and Mrs. Lovejoy shortly before they moved out of her house, they wanted her to adopt them and leave her property to them, and if in that conversation Mrs. Lovejoy did not say to defendant:

"If you don't leave your property to us in a good way, we will get it anyway."

This was excluded on plaintiff's objection that it was leading and suggestive and no proper foundation laid for the testimony, and that it was irrelevant and immaterial.

Defendant's counsel then offered to show by the testimony of defendant:

"That in the latter part of July, 1924, and before the Lovejoys moved out of her house in the city of Vermillion, Mr. and Mrs. Lovejoy came over to her place and wanted the defendant to adopt them, and to leave her property to them, and asked the defendant if she would not make a will in favor of them, and when she refused, that Mrs. Lovejoy said to her, in the presence of her husband: 'If you don't leave your property to us in good way, we will get it anyway,' and further stated to the defendant on that occasion, 'There is two of us and only one of you, and a jury would believe our story before they would believe yours. We don't intend to pay you any rent from the day we stopped paying, and now we at least want one more year's rent free. You damn old maid, you have got plenty, and I will fix you so that you will have to divide in some way. You have been coming over there when Fritz Lass was there, and you had no business there.'"

And further offered to show that defendant replied:

"I never came over except when you came over and invited me,"
—and then Mrs. Lovejoy got angry and left.

Counsel for defendant stated that this testimony was offered as bearing on the credibility of the story told by Albert Lovejoy.

This offer was objected to on the ground of being leading and suggestive; not proper redirect examination; and no foundation laid for this testimony; irrelevant, incompetent, and immaterial, in so far as the plaintiff is concerned. The objection was sustained, and the proposed testimony disallowed.

■ In this the court erred. It seems to have been the view of plaintiff's counsel and of the trial court that, in order to render such testimony admissible, Lovejoy should have first been asked whether or not the conversation detailed in the offer had taken place, and only in the event of his denying it could he be contradicted by other testimony on the point.

This rule is applicable in the case of impeachment of a witness by showing that he has made on other occasions statements at variance with his testimony upon the witness stand, but it is not applicable where it is sought to show conduct or language on the part of the witness indicating bias or hostility towards a party to the action. "No predicate need be laid for the introduction of other witnesses, or other evidence to show by way of impeachment, bias, or hostility of a particular witness. Showing the existence of hostility or bias by cross-examination of the witness whose state of mind is in question, is simply one means of showing such fact." 5 Jones, Ev., p. 4615, § 2353.

In State v. Smith, 44 S. D. 305, 183 N. W. 873, 16 A. L. R. 982, we held that it was prejudicial error to exclude testimony of the character offered by defendant in this case. We there said:

"There seems to be a well-grounded distinction between the contradicting a witness for the purpose of impeachment and showing hostility or bias to impeach his credibility, and that it is not necessary to lay a foundation on cross-examination concerning the latter class of impeachments."

■ The court properly withdrew from the consideration of the jury Exhibits C, D, E, and F, warranty deeds from the defendant to her husband, Fritz Lass. These deeds were made after her marriage and a long time before the commencement of this

action. There is no evidence in the case indicating that these conveyances were made in anticipation of litigation being commenced against the defendant by any one, and we do not think they had any tendency to show that defendant had done anything to alienate the affections of Fritz Lass from his wife, Sophia Lass.

We think the defendant should have been allowed to state how much rent was owing her by Lovejoy. The amount she was claiming from him might reasonably have intensified his hostility.

The remaining assignments disclose no prejudicial error. The charge of the court covered all of the issues and stated the law correctly. There was sufficient evidence, if believed, to warrant the submission of the case to the jury.

The judgment and order denying a new trial are reversed.

CAMPBELL, P. J., and POLLEY, SHERWOOD, and BURCH, JJ., concur.